NUMBER 13-99-00638-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


ALEX SANDER MARTINS , Appellant,


v.


THE STATE OF TEXAS , Appellee.

___________________________________________________________________


On appeal from the County Court at Law No. 1

of Cameron County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Hinojosa, Castillo and Amidei (1)

Opinion by Justice Castillo


Alex Sander Martins was convicted by a jury of the offense of indecent exposure and sentenced to six months confinement
and a fine of $500.00. The confinement portion of the sentence was suspended and he was placed on community
supervision for two years. From this conviction, Martins appeals. He alleges ineffective assistance of counsel, asserts
violations of his right to confrontation by not having a Portuguese interpreter, and attacks the legal and factual sufficiency
of the evidence. We affirm the conviction.

Factual and Procedural Background

On September 21, 1998 at around 12:40-12:45 pm, as the alleged victim was walking home after leaving her daughter at
Garden Park Elementary school, she saw a man parked in a small white car by a convenience store, wearing a partially
unbuttoned shirt. He appeared to be wearing very short shorts or no pants as she could see his legs. The man made a u-turn
and pulled up beside her as she kept walking. The man made another u-turn, pulled up beside her again and she again kept
walking. The first time she saw him, she did not get a good look at him and the second time she did not look at him but did
write down his license plate. Making another u-turn, he invited her in Spanish to take a ride with him. He also invited her
to give him kisses while simultaneously pointing at his penis which was exposed. The victim was unclear on whether the
man's penis was erect. (2) She had no problems in understanding what he was saying and he spoke in a normal tone of
voice. He was wearing a completely unbuttoned shirt, no pants, and sunglasses. She could not see his legs beneath his
knees. She got a good look at him on this occasion. She told him "no" in Spanish, told him to leave her alone and kept
walking. He made another turn, stopped her again, again told her to get in the car and give him some little kisses, while
still exposing himself and driving in reverse as she was walking and telling him "no." He finally drove off. The victim went
home, told her mother, and called the police. The police took her to a store where she identified a man they had detained
as the same man who had exposed himself to her.

Appellant, a native of Brazil and a pastor for the Universal Church, was charged with the offense. The waiver of
arraignment filed on his behalf indicated that he could read, write, and understand English, but was also marked in
handwriting, "translated for him," followed by initials appearing to be those of his attorney, who spoke both English and
Spanish. During the voir dire, appellant greeted the panel in English. Although there was no motion ever filed requesting
an interpreter, the official court interpreter translated the proceedings during trial for appellant from English to Spanish. 
At trial, the victim testified to the event and made an in-court identification of the appellant as the man who exposed
himself to her. Two police officers also testified. 

Cristobal Abrego, Jr., an officer with the Brownsville Police Department ("BPD"), testified to being dispatched at around
1:00 p.m. on the date of the incident and informed that he was to look for a small white vehicle with certain license plates. 
He noticed the vehicle near Garden Park Elementary and activated his overhead lights. The vehicle would not come to a
stop despite the officer's use of his overhead lights, siren, and horn, but Abrego acknowledged there was no shoulder at
that particular segment of the road. Abrego noticed the driver slouched down and fumbling inside the car with much
movement while still driving. The car eventually pulled into a parking lot and the driver continued fumbling. The officer
approached carefully because of all the movement, while ordering the driver out of the car in both Spanish and English. 
The officer noticed the driver tucking with one hand along the waist area. The driver exited once the officer approached
the vehicle. Abrego observed that the driver's shirt was untucked and he was trying to button it. His pants were buttoned
but the zipper was completely opened. Abrego did not notice any sunglasses. The officer interviewed the driver, but had
trouble understanding what the driver was telling him. He noticed "kind of a Spanish accent" but had trouble
understanding the driver's Spanish. Abrego then advised another officer via radio that he had detained a subject. The other
officer, Leo Garza, advised Abrego that he was on his way with the victim. Garza drove slowly through an adjacent
parking lot and then advised over the radio that the victim had positively identified the subject and he was placed under
arrest. The officer did not make an in-court identification of the defendant although there were several references to "the
defendant's car."

The second officer, David Martinez, a detective with the BPD, testified that he responded to a call regarding a small white
vehicle with certain license plates, at around 1:00 p.m. on the date of the incident, but by the time he arrived at the scene,
another officer had already made contact with the suspect and had him against the car. Martinez made an in-court
identification of appellant as the suspect he saw. The officer noticed that the suspect's shirt was sticking out and was
buttoned only at the center button. The suspect was very nervous and was questioning what was going on. Martinez ran
the plates through dispatch and they were confirmed as being the same ones identified by the victim. The victim was
brought by another officer who drove through the parking lot and the suspect was moved so the victim could get a good
view of him. Martinez was advised that there was a positive identification. Martinez later took a statement from the victim,
who appeared "very scared" and shaken. She was teary-eyed and made the statement because she did not want it to happen
again and was concerned because someone did that so close to the school. Appellant put on three witnesses. The official
court interpreter translated the testimony of all three witnesses from Spanish into English for the jury. It was noted that
appellant would understand his wife in Spanish. She testified that her husband was a pastor and had come from Houston,
having previously been a pastor in France, Holland, and Brazil and they had been married for almost eight years. She
stated that the morning of the incident, he had left at the usual time to take their son to school and then had arrived at home
after the service at around 11:30 a.m. He had left home at almost noon to get their son and arrived back home around
12:30. According to Mrs. Martins, her husband had stayed home then about twenty or thirty minutes, leaving at around
12:50 p.m. to take a package to a Federal Express office which was about ten minutes from their home. That day he had
worn a white shirt with red stripes which was missing the third button and some grey pants. 

The next witness, Maria De Los Angeles Duran, a member of appellant's congregation, testified that she knew appellant
like a son, he had a good reputation, and his reputation was excellent with church members. She occasionally went with
him to Pharr and, after he learned the way, he would travel either on Military Road or by the expressway. She also testified
that she believed him regarding the allegation.

Appellant, who was the last witness in the case, also testified in Spanish through the interpreter. He stated that he was a
pastor for the Universal Church, had been a pastor in Houston for two years before arriving in Brownsville, and had
previously been in France and Holland. He had been born in Brazil and had arrived in Brownsville on September 3, 1998. 
At the time of the incident, he had only been to Pharr twice and had been planning to open up a church there. That morning
he had left at around 8:20 with his son, dropped him off at school and then went to the church for service which started at
10:00 a.m. After the service he went home and was there about fifteen to twenty minutes before leaving to get his son. 
That day his son, who normally got out of school at 12:30 p.m., was being released a bit earlier. Martins stated he came
back from the school at around 12:30 p.m. and then was fixing a video game while his wife prepared the Federal Express
package. Martins stated he left home at ten or fifteen minutes before 1:00 p.m. 

At this point an objection was lodged by the State that Martins had said more that was not translated. The interpreter
responded that his accent was "a bit different" and the judge told her to translate "the best you can." After a brief discussion
between the interpreter and the witness, the prosecutor again argued that appellant had said something more and defense
counsel objected to the State's insistence that appellant had said more than was translated. The prosecutor interposed that
appellant had said, "dure quince minutos." (3) The judge stated he had to rely on the interpreter and instructed her that she
needed to translate everything even if she did not think it was relevant. He also instructed appellant to allow the interpreter
to interpret before continuing talking. The court interpreter then stated, "Can I say something? He has a different accent." 
The judge indicated that he understood that and that was why he was telling the defendant to talk and then let her translate
and not to ramble, to which the court interpreter answered, "Okay." Later, in cross-examination, appellant acknowledged
that he had been at home for approximately fifteen minutes. 

Appellant then testified that after he went to the Federal Express Office, he drove toward Pharr but then turned back to get
pamphlets from the church to evangelize. He was coming back when he noticed the police behind him. At first he did not
realize they were trying to stop him, but when he did he decided to get his wallet from his right back pocket and his
passport from his portfolio under the passenger's seat of the car, while the officer was following him. He did not find the
passport because it was at home and was concerned because his visa was expired. He thought of stopping but there was no
place to stop so he stopped at the first place he could. He could not remember if the zipper of his pants was open but the
first two buttons of his shirt were open because he had taken off his tie. On cross-examination, he stated that his shirt was
completely buttoned except for the missing third button. Appellant also said that the back of his shirt was untucked
because he had been sitting in the car a long time. He denied ever being parked near the convenience store, making u-turns
and approaching the victim, soliciting her to take a ride, exposing himself, or continuing to follow her. He denied ever
seeing her before. He stated his windows were down but only because the air conditioning was not working well. When the
police stopped him, they did not tell him why and he was taken to jail. Appellant acknowledged hearing the victim testify
and having it interpreted for him into Spanish and denied the veracity of her accusations. 

The jury returned a verdict of guilty. Sentencing was by the court. Appellant subsequently filed a motion for new trial with
two complaints. His first was that he had been inadequately advised of a previously extended plea offer because he had not
been informed of the offer to plead no contest or dismissal of the charge after completing probation. In the motion,
appellant claims the failure "even though it may be due to the fact that [his] primary language was Portuguese" constituted
ineffective assistance of counsel and argued that he would have accepted the plea bargain and so was harmed. His second
complaint in the motion for new trial was that the trial court imposed an illegal sentence by requiring that he register as a
sex offender. Attached to the motion, among other items, were two affidavits in English signed by appellant and one in
Spanish signed by appellant as well as an affidavit from the court interpreter. (4) There was no affidavit from the trial
lawyer. The court denied the motion for new trial on July 26, 1999 without a hearing and appellant filed a motion to
reconsider on August 27, 1999. In the motion to reconsider, he again urged his illegal sentence claim and his claim of
inadequate advisement of the State's plea offer, but added "additional evidence"- the entire reporter's record - and
additional arguments, expanding his claim of inadequate advisement of the plea offer to a denial of a right to participate in
trial, arguing that he had been denied a Portuguese interpreter and thus his rights to confrontation and effective assistance
of counsel. (5) On that same day he filed a supplement to the motion to reconsider which contained a new affidavit from a
probation officer. The State filed a motion "in opposition to Defendant's motion for new trial" and argued that while
appellant was not entitled to a new trial, he was entitled to a reconsideration of sentencing and noted that while the court
was not precluded from requiring sex offender registration, the code of criminal procedure did not mandate registration for
a first time indecent exposure offender and asked the court to "reform his sentence...by removing the improper condition of
probation." The trial court held a hearing on September 2, 1999, where it only considered the issue of sex offender
registration. The court denied the motion to reconsider the motion for new trial, reformed the judgment so it would not
require that appellant register as a sex offender and ordered the expunction of the registration of Martins as a sex offender.

Ineffective assistance of counsel

Appellant's first issue on appeal alleges that he was denied his right to effective assistance of counsel under the Sixth
Amendment of the United States Constitution because a plea offer was not adequately communicated to him because his
lawyer did not speak Portuguese. His fourth issue is similar, claiming to have received ineffective assistance of counsel
because he could not communicate with his lawyer to prepare his defense or witnesses. 

We review claims of ineffective assistance of counsel under the standard enunciated in Strickland v. Washington, 466 U.S.
668 (1984). Thus, appellant must show that: (1) his counsel's performance fell below an objective standard of
reasonableness, based on prevailing professional norms, and (2) there is a reasonable probability that, but for the counsel's
unprofessional errors, the result of the proceeding would be different. McFarland v. State, 845 S.W.2d 824, 842 (Tex.
Crim. App. 1992).

For support of his first issue, appellant cites his affidavit attached to the motion for new trial. In that affidavit, appellant
claims he was not informed about an offer to plead no contest, to deferred adjudication, without sex offender registration. 
In his brief, appellant argues that the offer was relayed but he did not understand it. He argues that he would have accepted
the plea offer if he had understood that the charge would have been dismissed on the completion of deferred adjudication
community supervision and so was prejudiced. He mentions that the misunderstanding might come from the fact that his
primary language is Portuguese.

We first note that the affidavit attached to the motion for new trial was never introduced in the trial court and hence is not
evidence in this case. Saenz v. State, 976 S.W.2d 314, 321 n.2 (Tex. App. - Corpus Christ 1998, no pet.). Affidavits
attached to a motion for new trial are merely pleadings and not evidence in themselves. Id. There is therefore no evidence
in the record to support appellant's first issue. (6) We overrule this point. 

Appellant's second claim of ineffective assistance of counsel, in his fourth point of error, specifically claims that he could
not adequately communicate with his counsel. For this point, he likewise relies on the non-evidentiary affidavit, as well as
certain passages in the record. We will not consider the affidavit for the reasons stated above. We will likewise not
consider the affidavit of the court interpreter which was also attached to the motion for new trial but not offered into
evidence at any hearing for the same reason. The remaining record does not indicate any specific lack of communication
with counsel or specific instances of harm. The section of the record from the trial which appellant cites as demonstrating a
language barrier - the "dure quince minutos" section - actually reveals that defense counsel understood what his client was
saying on the stand and was attempting to keep out information which he believed harmful to his client by objecting to the
State's attempt to have the additional words apparently spoken by his client translated to the jury. Unlike Ex parte Guzman,
730 S.W.2d 724 (Tex. Crim. App. 1987), upon which appellant relies, the appellant and his attorney both spoke a common
language - Spanish. There is nothing in the record that demonstrates that counsel failed to communicate with appellant and
appellant presents no evidence that the outcome of his case would have been different if he had a Portuguese-speaking
attorney. Appellant also complains that the trial court's failure to sua sponte appoint a Portuguese interpreter to translate
the proceedings at trial caused his counsel to be ineffective. While we deal more at length with the question of the
appointment of a Portuguese interpreter below, it is sufficient for this issue to note that appellant has failed to provide any
specific instance of harm demonstrating how the lack of a Portuguese, as opposed to Spanish, interpreter at trial caused his
attorney to commit any unprofessional error, much less one so egregious that but for that error, the outcome of his trial
could have been different. (7) Kan v. State, 4 S.W.3d 38, 43 (Tex. App. - San Antonio, no pet.). We overrule appellant's
fourth issue.

Right to Confrontation

In his second, third, and fifth issues, appellant alleges that he was denied his rights to confrontation under the United States
Constitution, the Texas Constitution, and Texas Code of Criminal Procedure article 38.30, respectively. We first observe
that appellant has not briefed his claim regarding his state constitutional rights separately from his claim regarding his
federal constitutional rights, nor has he provided any rationale for construing the Texas Constitution more broadly than the
U.S. Constitution. He has thus forfeited error on his state ground and we do not address his third issue. See Black v. State,
26 S.W.3d 895, 896 n.4 (Tex. Crim. App. 2000). 

 The right to confrontation includes the right to trial proceedings interpreted in a language that a defendant can understand.
Vasquez v. State, 819 S.W.2d 932, 937 (Tex. App. - Corpus Christi 1991, pet. ref'd). This is necessarily so because unless
the defendant had knowledge of the testimony of the witnesses against him, he could not exercise his right of
cross-examination. Garcia v. State, 210 S.W.2d 574, 601 (Tex. Crim. App. 1948). Thus when it is made known to the trial
court that a defendant does not understand the English language an interpreter must be provided to translate the proceedings
for the defendant. Baltierra v. State, 586 S.W.2d 553, 559 (Tex. Crim. App. 1979). This includes having an interpreter
considered to possess adequate interpreting skills for the particular situation and familiar with the use of slang. Leal v.
State, 782 S.W.2d 844, 849 (Tex. Crim. App. 1989). However, the mere fact that a defendant may be more fluent in
another language does not require the appointment of an interpreter. Flores v. State, 509 S.W.2d 580, 581 (Tex. Crim. App.
1974); Hernandez v. State, 986 S.W.2d 817, 822 (Tex. App. - Austin 1999, no pet.). 

This right to have the proceedings translated for a non-English speaker is implemented in Texas through code of criminal
procedure article 38.30(a) which provides: 

When a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding,
it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must
be sworn to interpret for him. Any person may be subpoenaed, attached or recognized in any criminal action or proceeding,
to appear before the proper judge or court to act as an interpreter therein, under the same rules and penalties as are provided
for witnesses. In the event that the only available interpreter is not considered to possess adequate interpreting skills for the
particular situation or the interpreter is not familiar with the use of slang, the person charged or witness may be permitted
by the court to nominate another person to act as intermediary between himself and the appointed interpreter during the
proceedings. 



 Tex. Code Crim. Proc.Ann. art. 38.30(a) (Vernon Supp. 2001) . 



The right to confrontation, however, is not fixed or immovable and may be waived. Garcia, 210 S.W.2d at 600. In the
case of a complaint about a lack of interpreter, a defendant waives his right to complain when he does not object or file a
motion for an interpreter, unless the trial court is aware that he needs one. Villarreal v. State, 853 S.W.2d. 170, 171 (Tex.
App. - Corpus Christi 1993, no pet.).

Where an interpreter has been appointed, the standard of review depends on the nature of the complaint made. An attack
on the competency of an interpreter is distinct from an attack on the accuracy of a translation. Garcia v. State, 887 S.W.2d
862, 875 (Tex. Crim. App. 1994). The former is a question of law and so reviewable by an appellate court. Id. The
competence of an interpreter is for the trial court's determination, however, and an appellate court may only reverse for an
abuse of discretion. Mendiola v. State, 924 S.W.2d 157, 162 (Tex. App. - Corpus Christi 1995, pet. ref'd, untimely filed); 
Montoya v. State, 811 S.W.2d 671, 673 (Tex. App. - Corpus Christi 1991, no pet.). A general claim of confusion will not
suffice; where a defendant presents an issue of potential harm without a specific example of misunderstanding or inability
to confront a particular witness such as by way of objection, voir dire examination, or re-examination of the witness, he
fails to demonstrate any actual injury. Frescas v. State, 636 S.W.2d 516, 518 (Tex. App. - El Paso 1982, no pet.). In such
an event, even if there was error in the record, it would be harmless. Montoya, 811 S.W.2d at 672. 

An attack on the accuracy of a translation, on the other hand, is a question of fact for the factfinder and so not reviewable
on appeal. Garcia, 877 S.W.2d at 875. In such a case, a defendant must impeach the inaccurate or incomplete translation in
order to cure it. Id. The Garcia court went on to note that appellant Garcia never made a specific objection stating the
problem with the interpretation, never offered a "correct" interpretation through offer of proof or cross-examination, and
even on appeal did not note the specific problem or provide an explanation of harm. Garcia, 887 S.W.2d at 875 n.9. The
Garcia court concluded that even if it could review the issue, it would have to find that the defendant failed to preserve
error. Id. This Court has likewise found that if an appellant lodges a general complaint about the accuracy of translation,
rather than complaining about a specific translation, then he "fails to direct the court to any part of the record which shows
an alleged error in translation which prevented him from confronting the witnesses against him." Mendiola, 924 S.W.2d at
162. 

In the present case, under issues two and five, appellant argues that he was denied his constitutional right to confrontation
because he was not provided a Portuguese interpreter and did not understand the proceedings, had difficulty testifying and
could not assist his counsel. Difficulty in testifying and inability to assist counsel are not individually reviewable as
violations of the right of confrontation but we will consider them as part of a complaint as to the competency of the
interpreter. We note that appellant complains on appeal of not being provided a Portuguese interpreter and relies heavily on
case law dealing with the failure of a court to provide any interpreter. However, appellant was provided an interpreter,
albeit a Spanish-language interpreter. We therefore interpret this issue as an attack on the competency of the interpreter
appointed and the trial court's decision not to sua sponte provide a Portuguese-language interpreter in place of the
Spanish-speaking interpreter. Appellant does not complain of the inaccuracy of any particular translation, but rather the
competency of the interpreter in general, as a Spanish-language interpreter rather than a Portuguese-language interpreter. 
We therefore review the trial court's decisions regarding the competency of the interpreter and the decision not to sua
sponte appoint a Portuguese interpreter under an abuse of discretion standard. Mendiola, 924 S.W.2d at 162; Vasquez, 819
S.W.2d at 937; Baltierra, 586 S.W.2d at 559, n.9, citing Garcia, 210 S.W.2d at 581("[w]hen such condition arises, it
becomes necessary for the court, in the exercise of his discretion, to make inquiry to ascertain whether accused rights would
be safeguarded in the absence of an interpreter").

In his brief, appellant refers us to the two non-evidentiary affidavits and one cite to the record in support of his arguments
that the interpreter could not be used to adequately convey testimony to the jury and that appellant's most critical testimony
was interrupted by the interpreter's inability to translate. He provides conclusory statements that "under these
circumstances" Martins was denied his right to confrontation and "[b]ecause a Portuguese interpreter was not
provided...this case should be reversed and remanded."

Our review of the record before us, excluding the non-evidentiary affidavits, indicates that at no time did Martins ever
request a Portuguese interpreter or ever object to the competency of the provided Spanish-language interpreter. The record
reflects that appellant knew Spanish and testified in Spanish. Appellant apparently complains that the trial court did not
sua sponte determine that appellant should have a Portuguese interpreter instead of a Spanish interpreter. We decline to
shift the burden of objecting to the competency of the interpreter from the defendant. Montoya 811 S.W.2d at 672. If
appellant was unhappy with the interpreter, he should have objected and made a record. Id. We note that appellant waived
his right to any interpreter at all by failing to file a motion for an interpreter as required by article 38.30 and, indeed, the
record reflects at least one instance of appellant replying to a question in English. The trial court, nonetheless, appointed a
Spanish-speaking interpreter for the Spanish-speaking defendant. Since appellant was provided an interpreter to translate
the proceedings into a language he understood, the trial court unquestionably fulfilled all duties it had to protect appellant's
right to confrontation in this regard. Even if we were, arguendo, to accept appellant's argument that the trial court would
have been required, even without objection, (8) to appoint a different interpreter - a Portuguese interpreter - because it was
aware of appellant's difficulties in understanding Spanish, the record does not reflect any difficulties mandating the
appointment of a Portuguese interpreter. Appellant, who lived in Houston for two years, had a Spanish-speaking wife and
congregants, and, who himself testified in Spanish and communicated with his attorney in Spanish, obviously understood
Spanish. Thus the constitutional requirement of an interpreter to translate the proceedings to him in a language he
understood was clearly satisfied. We are also struck by the absence of a single objection by appellant to the lack of a
Portuguese interpreter, the competency of the Spanish interpreter or the accuracy of the Spanish to English translation
throughout the entire proceedings of the trial. The only objection ever interposed, and the one appellant cites in his brief,
was made by the State during appellant's testimony, when the Spanish-speaking prosecutor insisted that the interpreter had
not translated all of appellant's testimony and appellant's Spanish-speaking counsel vigorously opposed the admission of
any more of appellant's remarks. (9) From the context, it was clear that both attorneys knew exactly what the controverted
additional remark of "dure quince minutos" meant and the potential impact it had on the case. This exchange did not impact
appellant's right to confrontation as he himself was the witness. It did not affect his ability to testify as his own counsel was
the one trying to keep out the alleged untranslated remarks, which apparently counsel believed to be damaging. It did not
affect his ability to present his alibi defense as his counsel had ample opportunity in redirect to bring out any of the
"missing" testimony although, as noted, counsel apparently did not believe it in his client's best interest for that particular
statement to be made known to the jury. (10) The bare remark by the court interpreter that appellant had a "different accent,"
does not demonstrate that the Spanish-language interpreter was incompetent to interpret appellant's Spanish. 

Despite his failure to comply with article 38.30, appellant was provided an interpreter to translate the proceedings to him in
a language that he understood. He made no objection at trial to the competency of the interpreter, neither challenging her
lack of Portuguese-language skills nor her Spanish speaking skills, and can point to no portion of the record on appeal
which demonstrates any harm. (11) Appellant may very well have preferred a Portuguese interpreter and may have been
more fluent in Portuguese than Spanish, but that does not require a reversal of his case, particularly in light of his complete
failure to make any such preference known to the court or exercise his rights under article 38.30(a). (12) The mere fact that a
defendant may better express himself in Spanish than English does not require that the trial court appoint an interpreter
even where it has been requested. Vargas v. State, 627 S.W.2d 785, 787 (Tex. App. - San Antonio 1982, no pet.)(no error
in not appointing Spanish interpreter requested where defendant knew English but was more fluent in Spanish). Likewise, 
the mere fact that appellant may have been more fluent in Portuguese than Spanish would not mandate the appointment of a
Portuguese interpreter, particularly where none was requested. In Vargas, the San Antonio court noted that there was no
evidence that the defendant, who was not provided an interpreter, could not or did not understand the English language
during trial. Id. We note, similarly, that in the instant case that there is no evidence in the record before us that appellant
could not or did not understand the Spanish translation provided to him at trial and to which he did not object. There is,
further, no demonstration of any specific failure to understand particular testimony or how that specifically caused harm. In
view of all the circumstances in this case, we find the trial court did not abuse its discretion as to the interpreter's
competency and in notsua sponte appointing a Portuguese-language interpreter. We overrule appellant's second and fifth
issues. 

Sufficiency of the evidence

In his final two points of error, appellant attacks the legal and factual sufficiency of the evidence. In reference to both the
legal and factual sufficiency of the evidence, appellant particularly attacks the sufficiency of the evidence to demonstrate
the intent to arouse or gratify anyone and the identification of appellant as the culprit. 

In conducting a legal sufficiency review, we consider all the evidence in the light most favorable to the prosecution and
determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable
doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). In this review, we are not to reevaluate the weight and credibility of
the evidence, but rather, act only to ensure that the jury reached a rational decision. Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993). 

In conducting a factual sufficiency review, we also consider all the evidence but without the prism of the light most
favorable to the jury verdict. Clewis v. State, 922 S.W.2d 126, 134 (Tex. Crim. App. 1996). While authorized to disagree
with the jury, the reviewing court must be appropriately deferential to the jury's findings so as not to substitute its judgment
for that of the factfinder and so should act only to prevent a manifestly unjust result. Jones v. State, 944 S.W.2d 642, 648
(Tex. Crim. App. 1996). Unless the available record clearly reveals a different result is warranted, a reviewing court must
defer to the jury's determination concerning the weight to be given contradictory testimonial evidence. Johnson v. State, 23
S.W.3d 1, 18 (Tex. Crim. App. 2000). This is because resolution between such testimony often turns on an evaluation of
credibility and demeanor, which the jury, having been present when the testimony was delivered, would be in the best
position to evaluate. Id. Under a factual sufficiency review, the appellate court, after viewing all the evidence neutrally, is
to consider whether either the proof of guilt is so weak as to render it clearly wrong and manifestly unjust or the verdict of
guilt is against the great weight and preponderance of the available evidence. Johnson, 23 S.W.3d at 11.

Viewing the evidence in the light most favorable to the jury verdict, we find that a rational trier of facts could have found
the essential elements of the offense beyond a reasonable doubt, as required by Jackson v. Virginia, and so find the
evidence legally sufficient to sustain the conviction. As to the issue of identity, we note that the victim had several
opportunities to view appellant both at the scene and shortly after the event, made an unequivocable identification of
appellant both at the show-up and at trial as the man who exposed himself to her and even wrote down his license plate. 
We also note that appellant was found with his shirt untucked and his zipper open close to the scene of the crime in the
vehicle identified by appellant. In reference to the question of "intent to arouse or gratify," it is well established that intent
can be inferred from conduct of, remarks by, and circumstances surrounding the acts engaged in by a defendant. Turner v.
State, 600 S.W.2d 927, 929 (Tex. Crim. App. 1980). The evidence in the present case indicates that appellant exposed
himself on two occasions to the victim, inviting her to give him "little kisses" while pointing to his exposed penis,
apparently to demonstrate where the kisses should be placed. We find this is sufficient to support the finding of intent to
arouse or gratify. See Claycomb v. State, 988 S.W.2d 922 (Tex. App. - Texarkana 1999, pet. ref'd)( man on bench exposing
erect penis and making eye contact with woman and daughter who walked by); Barker v. State, 931 S.W.2d 344 (Tex. App.
- Fort Worth 1996, pet. ref'd) (man in pickup in front of school who exposed himself with "pulled out" penis as two school
girls walked by and glanced in the truck). 

Likewise, viewing all the evidence, without the prism of the "light most favorable to the prosecution" as required by
Clewis, we find that the evidence supporting the conviction is neither so weak as to render the verdict clearly wrong and
unjust nor is the jury's verdict against the great weight and preponderance of the evidence presented at trial. We overrule
appellant's sixth and seventh issues.Conclusion

Having found that appellant waived his third issue, and having overruled all of appellant's remaining issues, we affirm the
judgment of conviction. 



ERRLINDA CASTILLO

Justice



Publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 26th day of July, 2001.

1. Senior Justice Maurice Amidei assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. The only testimony on this issue was the following exchange between defense counsel and the victim:



Q. What could you see?



A. His private part.



Q. Okay. Is it erect?



A. What's that?



Q. Is it standing? Is it firm?



A. Well, kind of. I don't know.

3. "Dure quince minutos" is Spanish for "I stayed fifteen minutes" or "I took fifteen minutes."

4. In his brief, appellant states that the affidavit was translated into English from Portuguese and both versions were signed
by appellant and submitted to the trial court. A review of the "Portuguese" affidavit indicates that it is actually in Spanish. 

5. The rules of appellate procedure limit the filing of amended motions for new trial to no later than thirty days after the
date of judgment. Tex. R. App. P. 21.4(b). We do not believe this limitation can be circumvented by filing a "motion to
reconsider" which contains new grounds and new evidence after the statutory deadline for an amended motion. As the
question of the trial court's authority to act on such new grounds or consider such new evidence is not before us in this
appeal, we do not pass on the propriety of the trial court's actions reference the same at the motion for reconsideration. 
However, we will not consider any of the newly attached exhibits or grounds to have been validly before the trial court or
available to us for review on appeal. Rangel v. State, 972 S.W.2d 827, 838 (Tex. App. - Corpus Christi 1998, pet. ref'd).

6. Even if we could consider the affidavit, we would still overrule this point. In order to show ineffective assistance of
counsel, an appellant must show that, but for the counsel's unprofessional error, the result of the proceeding would have
been different. Ex Parte Wilson, 724 S.W.2d 72,74 n.1 (Tex. Crim. App. 1987). In the case of a plea bargain that was not
relayed, this means proof that the offer would have been accepted. Paz v. State, 28 S.W.3d 674, 675 (Tex. App. - Corpus
Christi 2000, no pet.). Assuming, arguendo, that such an offer was made and was not relayed, or was improperly relayed,
there is no proof of any harm. Despite appellant's assertions to the contrary, there is no language anywhere in the affidavit
that even suggests, much less unconditionally states, that appellant would have accepted the claimed plea offer. See
Martinez v. State, 28 S.W.3d 815, 818 (Tex. App. - Corpus Christi 2000, no pet.)(defendant's affidavit which recited "If I
had known what I know now about jury verdicts in Jackson County and had I sufficient time to talk about the pros and cons
about going to trial in Jackson County with my attorney, and had sufficient time to consider the 4 year offer, I would have
taken the 4 year offer instead of going to trial," failed to unconditionally state that if Martinez had known of the plea
bargain in time, he would have accepted it). 

7. Again, even if we were able to consider the affidavits, we would still not find ineffective assistance of counsel. The
only specific complaint against his counsel that appellant claims, aside from the relay of the plea bargain and the portion of
the record cited above, is that his counsel did not call certain witnesses. Appellant does not even claim that his lawyer did
not understand him about the witnesses. There is no evidence in the record as to why counsel did not call the witnesses and
thus no evidence that he did not call them because he did not speak Portuguese. Moreover, the nature of the evidence
which appellant claims would have been testified to - threats on his life after the accusation became public - would have
had "no influence over any fact that was any consequence to the ultimate determination of guilt or innocence" and thus
irrelevant and properly excluded if they had been offered. Rodriguez v. State, 857 S.W.2d 102, 108 (Tex. App. - Corpus
Christi 1993, no pet.). While possibly admissible in punishment under the broader "any matter the court deems relevant to
sentencing" language of Texas Code of Criminal Procedure Article 37.07,§3(a)(Vernon Supp. 2001), as the record is silent
about why trial counsel did not call these witnesses, we cannot conclude he was deficient. Brown v. State, 881 S.W.2d 582
(Tex. App.- Corpus Christi 1994, no pet.).

8. We recognize that where the trial court is aware that a defendant needs an interpreter and fails to appoint one, a
defendant does not waive his right to complain of the lack of an interpreter. Baltierra v. State, 586 S.W.2d 553, 558;
Vasquez v. State, 819 S.W.2d 932, 937 (Tex. App. - Corpus Christi 1991, pet. ref'd). However, where a defendant fails to
object, the reviewing court should examine whether there were circumstances which show the trial court should have
inquired into the matter on its own. Id. In the present case, the evidence indicates that the trial court knew that appellant
did not speak English but did speak Spanish. The court then provided a Spanish-speaking interpreter. Appellant now
makes the argument that the trial court should have gone further and inquired on its own, whether appellant really
understood Spanish or needed an interpreter in a different language. While not holding that such a duty is required of the
trial court, addressing appellant's assertion arguendo would then logically require that we review whether there were 
circumstances which would have shown that appellant did not understand Spanish.

9. If this objection had been made by the defense, it would have constituted an objection to the accuracy of the
translation.Garcia v. State, 887 S.W.2d 862, 874-75 (Tex. Crim. App. 1994). However, it is clear from the context that it
was the State who was claiming the translation was incomplete, and therefore inaccurate, and the defense who was
attempting to block the translation of the contested additional remarks, claiming that the portion translated was the
complete (and therefore accurate) statement.

10. The State likewise would have had a right, and did, inquire about the "dure quince minutos" issue during
cross-examination. 

11. Even the affidavits filed, if we were able to consider them, fail to provide sufficient evidence to demonstrate an abuse
of discretion in the trial court not sua sponte appointing a Portuguese interpreter. In her affidavit, the court interpreter,
while noting that appellant's expressions and accents and understandings were different from what she was trained to do,
also recites that he never complained nor told her that he did not understand. Appellant, interestingly, does not complain in
his affidavit that he needed a Portuguese interpreter at all. Instead, he complains of the adequacy of the interpreter to
translate English into Spanish. His only complaint regarding Portuguese was in reference to his dealings with his lawyer,
not the translation at trial. 

12. Appellant, of course, could have requested the appointment of a Portuguese interpreter under the provisions of code of
criminal procedure article 38.30(a). Tex. Code Crim. Proc. Ann. art. 38.30(a)(Vernon Supp. 2001). Article 38.30(a) also
provides that a defendant can nominate another person to serve as an intermediary between himself and the interpreter in
the event that the only available interpreter is not considered to possess adequate interpreting skills for the particular
situation or the interpreter is not familiar with the use of slang. Id. Appellant did not avail himself of either of these
options.