11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Jacob
Theodore Monroe

Appellant

Vs.                   No. 11-04-00015-CR -- Appeal from Taylor County

State
of Texas

Appellee

 

Jacob Theodore Monroe appeals his conviction by a
jury of the offense of robbery.  The
court assessed his punishment at five years in the Texas Department of Criminal
Justice, Institutional Division.  He
contends in three points of error that (1) the trial court abused its
discre-tion by overruling his motion to suppress his statement, (2) the trial
court abused its discretion by admitting evidence of pretrial and in-court
identification, and (3) the trial court erred by denying him a new trial
because the prosecutor made a false statement during final argument.  We affirm. 
    Monroe contends in point one
that the trial court abused its discretion by overruling his motion to suppress
a statement that he gave to the police prior to trial.  At a suppression hearing, the trial court is
the trier of fact and assesses the witnesses=
credibility and the weight to be given their testimony.  Herron v. State, 86 S.W.3d 621, 627
(Tex.Cr.App.2002).  As long as they are
supported by the record, we afford almost total deference to a trial court=s findings of historical fact.  Id. 
We defer to a trial court=s
ruling on the application of laws to the facts if they turn on an evaluation of
credibility and demeanor.  Id.

Monroe sought to suppress a written statement that
he had given to the police on the basis that it was an involuntary statement
and that it was taken in violation of his right to counsel because he continued
to be questioned after he had asked for an attorney.  After a pretrial hearing, the trial court
made the following findings: 

1.  The
defendant was advised of his right; and, the defendant was not promised
anything in return for his statement.  

 

2.  The
defendant did not request an attorney.

 








3.  The
defendant did not terminate the interview. 


 

4.  The
defendant was shown the proposed statement and was asked Awhether there was anything in the
statement that he disagreed with,@
and he said, Ano.@ 

 

5.  The
defendant knowingly and voluntarily waived his rights with regard to the
statement; and, the defendant knowingly and voluntarily signed the statement. 

 

At the hearing on his motion to suppress, Monroe testified that
he was questioned before he got to the police department, that he was not given
any Miranda[1]
warnings, and that he had requested an attorney.  He said that the police did not allow him to
seek an attorney.  He related that he was
told that, if he did not cooperate, he could be Aviolated@ for his felony probation.  Monroe also testified that he was intoxicated
at the time he made his statement.  

Officer Brent Irby of the Abilene Police
Department stated that he took Monroe=s
statement, that Monroe never asked for an attorney, that Monroe was not
promised that he would not be charged with a crime if he cooperated, and that
Monroe showed no signs of intoxication at the time the statement was made.  He noted that the statement form contained
the Miranda warning.  He stated
that he personally went over each of the rights contained in the warning with
Monroe.  He related that Monroe indicated
he understood these rights and that Monroe freely and voluntarily waived those
rights.  Officer Irby testified that,
although Monroe was brought to the police station in a patrol car, he went
freely and voluntarily and was not under arrest.  

Officer Steffen Hartness of the Abilene Police
Department testified to witnessing the statement Monroe gave to Officer
Irby.  Officer Hartness indicated that he
would not have witnessed and signed the statement as a witness had Monroe not
either read the bottom portion of his rights, which included statements that he
read and understood his rights and that he was waiving the rights and making
the statement freely and voluntarily, or had those statements read to him.  Officer Hartness denied making or hearing any
promises to Monroe that maybe the police would go easier on him if he made a
statement, or anything to that effect. 
He indicated that, if Monroe requested an attorney, he was not
present.  He related that Monroe was
released after making the statement, adding that no one except a Hispanic male
was arrested that night.








The testimony was conflicting regarding the
matters discussed by Monroe with respect to this point on appeal.  The trial court=s
findings resolving those matters are supported by the record.  Monroe=s
argument relies on the truth of his own testimony, without making any mention
of the conflicting testimony that supports the findings of the trial court and
the court=s
overruling of Monroe=s
motion to suppress.  We overrule point
one.  

Monroe asserts in point two that the trial court
abused its discretion by admitting evidence of both pretrial and in-court
eyewitness identification.  The
complainant was robbed while delivering a pizza.  Probably not more than 45 minutes after the
robbery, the complainant was taken back to the scene of the offense, where he
identified Monroe as one of those participating in the robbery.  At the time of the identification, Monroe was
the only male present who was not a police officer.  Nothing would have prevented the police from
having a lineup rather than the one-on-one identification procedure.

Even if an identification procedure is suggestive
and unnecessary, the admission of identification testimony does not violate due
process so long as the identification possesses sufficient aspects of
reliability.  Neil v. Biggers, 409
U.S. 188 (1972); Garza v. State, 633 S.W.2d 508, 513
(Tex.Cr.App.1982).  We must review the
totality of the circumstances and, in doing so, must consider various factors,
including (1) the opportunity to view, (2) the degree of attention, (3) the
accuracy of the description, (4) the witness=s
level of certainty, and (5) the time between the crime and the
confrontation.  Neil v. Biggers, supra
at 199; Garza v. State, supra at 513.  








In this case, the complainant indicated that the
person who robbed him was standing no more than a foot from his face.  He said that he got a good look at him and
that the area was lit well enough because there was a street light fairly close
by.  The complainant gave a detailed
description of the man who assisted in the robbery, describing him as a
Hispanic male in his teens, approximately 5' 6" tall, 160 to 170 pounds,
with brown hair.  The record does not
reflect the extent to which Monroe meets that description.  Officer Andrew Boettcher of the Abilene
Police Department testified that the complainant identified Monroe without any
hesitation, only asking him to remove his hat. 
The complainant testified that there was no question in his mind that
Monroe was the same person he had seen the night of the robbery.  As previously noted, the complainant
testified that his identification of Monroe at the scene probably occurred 45
minutes or less after the robbery.  We
would also note that the trial court had before it Monroe=s written statement in which he
admitted taking part in the robbery.  Considering all the circumstances, we conclude
that there was not a very substantial likelihood of irreparable
misidentification.  We overrule point
two. 

Monroe argues in point three that the trial court
erred by overruling his motion for new trial because the State=s attorney said in final argument that
Monroe=s
witnesses never informed the proper authorities regarding their personal
knowledge of Monroe=s
involvement in the crime.  He insists
that an affidavit attached to his motion shows that approximately three months
prior to trial a defense investigator informed the State regarding the defense
witnesses= personal
knowledge.  In the affidavit attached to
Monroe=s motion
for new trial, Jerry Martinez, a private detective assigned to assist in Monroe=s defense, said that he met with Joel
Wilks, an assistant district attorney on a date approximately three months
prior to the trial.  Martinez said that,
at the meeting, he questioned Wilks regarding the involvement of one Laura
Simons in the robbery.  Martinez stated
that he advised Wilks that he had received information that Simons was present
during the robbery.  He indicated that he
also informed Wilks that Monroe was denying that Rafael Corrales was involved
in the robbery.  

Martinez=s
affidavit, which was attached to Monroe=s
motion for new trial, was not introduced into evidence and, therefore, is not
evidence in this case.  Martins v.
State, 52 S.W.3d 459, 468 (Tex.App. - Corpus Christi 2001, no pet=n). 
Consequently, there is no evidence in the record that supports this
point.  We overrule point three.

The judgment of the trial court is affirmed.

 

PER CURIAM

 

January 31, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of:  Wright, J., and

McCall,
J., and Hill, J.[2]











[1]Miranda v. Arizona, 384 U.S. 436 (1966).





[2]John G. Hill, Former Chief Justice, Court of Appeals,
2nd District of Texas at Fort Worth sitting by assignment.