In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-17-00462-CR
_____

ZHIGANG WANG, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court of Law No. 5
Montgomery County, Texas
Trial Cause No. 16-316220

MEMORANDUM OPINION

Zhigang Wang appeals his conviction for assault-family violence, a class A misdemeanor. Tex. Penal Code. Ann. § 22.01(a)(1), (b) (West 2019); Tex. Fam. Code Ann. §§ 71.0021(b), 71.003–.005 (West 2019). In thirteen issues, Wang challenges the sufficiency of the evidence to sustain his conviction, the sufficiency of the evidence to support a finding of family violence, the trial court's rulings during jury selection on a *Batson* challenge and a challenge for cause, the trial court's

1

decision to allow an undisclosed witness to testify, the trial court's decision to admit a recording of a previous argument between Wang and the victim, the trial court's decisions regarding translations of recordings admitted during trial, the trial court's decision to deny Wang's motion for new trial, and the terms of his community supervision. For the reasons stated below, we affirm the judgment of the trial court.

## I. Background

The victim, G.W.[1] testified at trial that she is married to Wang and they have an eight-year-old daughter, S.W. On August 10, 2016, the family returned to their residence from a beach vacation. According to G.W., following their return, Wang told S.W. to "go . . . study." When S.W. did not immediately do so, Wang threatened to put her in the "black room" as punishment. G.W. explained that the "black room . . . is a closet inside our bedroom . . . [with] no window." G.W. stated Wang yelled at S.W., and she intervened and told Wang not speak to their daughter in that manner. This exchange erupted into an argument between G.W. and Wang. G.W. testified that she was seated on the couch when they began arguing, and Wang stood on the other side of the couch. G.W. testified that Wang insulted her family and she in turn

---

[1] We refer to the victim and her family members by their initials to conceal their identity. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

2

spoke about his family, prompting Wang to throw his cell phone at her, hitting her in the face. The cell phone hit her nose and eyebrow. Wang then charged at G.W. and began hitting her with his fists on her head, face, and wrist. G.W testified that S.W. witnessed the attack and that Wang only stopped hitting her "[b]ecause my daughter was screaming and crying." As a result of Wang's attack, G.W.'s nose was cut, bleeding, and she had bruising around her eye and on her arms. G.W. said she felt pain because of the attack. Wang left the residence, and G.W. called the police to report the attack.

S.W. also testified at trial. She stated that the family went on vacation, and when they arrived back at their house, her father told her to go do her homework. S.W. said she did not start her homework as instructed by her father. She did not remember if her father was upset at her but testified that her parents began arguing. S.W. stated that she did not see her father throw anything at or hit her mother, but the police arrived at their house and her mother went to the hospital. S.W. testified that her mother "was bleeding on her nose and up on her eyebrows." Upon cross-examination, S.W denied telling the State a different version of her testimony, but she admitted that her mother "[k]ind of" told her to lie.

Deputy Ryan McClintock testified that he responded to the domestic violence 911 call placed by G.W. The Deputy stated that upon arrival, he observed a male

3

standing in the driveway who he identified at trial as Wang. According to McClintock, Wang voluntarily admitted that he threw the cell phone at G.W.'s face. McClintock then interviewed G.W., who was crying, had visible wounds to her nose, and a "contusion on the right side of her face." The Deputy stated that G.W.'s wounds appeared to be defensive, explaining that defensive wounds "are on hands, basically blocking any type of object on the inside of your hands, scrapes or anything of that nature[,]" and did not appear to be self-inflicted. He believed the wounds were consistent with Wang's statement that he hit G.W. in the face with a cell phone. G.W.'s other wounds were consistent with someone punching her. McClintock took photographs of both G.W. and Wang, which the State admitted at trial.

Video footage of McClintock's dash cam was also admitted at trial and according to the Deputy, S.W. can be heard telling the police that "daddy hit her in the arms, too." EMT records were also admitted that stated "[p]er patient's daughter, patient was punched in the left eye and right shoulder, as well as struck on the nose with a phone." Additional medical records admitted by the State also show S.W. provided hospital personnel with the same information. Based on his investigation, his physical observations of G.W., and Wang's admission that he hit G.W. with a cell phone, McClintock arrested Wang for a "class A assault family violence."

4

At trial, Wang denied that he and G.W. were married or currently dating and testified they only reside in the same house with the child. On August 10, 2016, they had just returned from a beach vacation and he was "very happy." Wang wanted S.W. to study, and S.W. wanted to play longer. Wang testified that he allowed S.W. to play ten more minutes, but when she refused to study again, he punished her by putting her in the closet. Wang stated that G.W. did not agree with sending S.W. to the closet and they began arguing, but he believed G.W. was really upset because he would not "sponsor [G.W.] to get a legal status [in the United States.]"

Wang denied causing the injuries to G.W. Wang explained that when he told the officer he threw the phone at G.W., he was not "clear- minded." He had just returned from the beach and it was a very hot day. His described his head as "dizzy and not clear[,]" and when he spoke to the officer, other police officers surrounded him. According to Wang, "[his] native tongue is Chinese" which created a language barrier further hindering communication. Wang testified that at the time he wanted to say he threw the cell phone at "her direction."

A jury found Wang guilty of assault. The trial court found there was family violence and assessed punishment at confinement of one year in the Montgomery County Jail but suspended the confinement and placed Wang on community supervision for twenty months. The trial court also ordered Wang to pay a $2000

5

fine and, as a term of his community supervision, pay reasonable expenses for G.W.'s counseling as needed for one year. Wang timely filed this appeal.

## II. The Sufficiency of the Evidence

Wang challenges the sufficiency of the evidence to convict him of assault family violence. Wang argues the "claim that [G.W.] was struck with a closed fist and kicked is not supported by the evidence[,]" and the rubber case around his cell phone was incapable of causing a laceration.

When there is a challenge to the sufficiency of the evidence, we review the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 (1979)) (concluding the *Jackson* standard "is the only standard that a reviewing court should apply" when examining the sufficiency of the evidence); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "[We] must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (citations omitted). The jury is the sole judge of the witnesses' credibility and weight to be given to their testimony. *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citations omitted). Juries may draw

6

multiple reasonable inferences from facts so long as each inference is supported by the evidence presented at trial. *Id*. Accordingly, we must defer to the jury's determinations of weight and credibility of the witnesses. *See Brooks*, 323 S.W.3d at 899.

To prove assault family violence, the State had the burden to establish beyond a reasonable doubt that Wang "intentionally, knowingly, or recklessly cause[d] bodily injury to [G.W] . . . by striking the complainant with [his] hands, and with [his] cell phone[.]" The State further had the burden to establish that Wang committed family violence against G.W. because G.W. was a member of Wang's household or a person with whom he had a dating relationship. Photographs admitted at trial showed that G.W. had visible injuries to her face. G.W.'s testimony described Wang throwing a cell phone that hit her in the face and that after Wang hit her with the cell phone, he assaulted her by punching her face and body. Deputy McClintock's testimony verified the existence of visible wounds on G.W.'s face consistent with being hit by a cell phone and defensive wounds on her arms and hands. According to McClintock, Wang admitted to throwing his cell phone at G.W. In addition, the record shows that S.W. told multiple sources, including law enforcement and medical personnel, that she witnessed Wang hit G.W. in the face.

Household is defined as "a unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." Tex. Fam. Code Ann. § 71.005. Testimony at trial conflicted regarding whether Wang and G.W. were married, but Wang and G.W. agreed they shared the same residence. "The focus of the family-violence finding is thus on the relationship between the defendant and the specific victim of the offense. If the victim of the specific offense is a member of the defendant's family or household, then the affirmative finding is justified." *Agbogwe v. State*, 414 S.W.3d 820, 840 (Tex. App.—Houston [1st. Dist.] 2013, no pet.) (citing Tex. Code. Crim. Proc. Ann. art. 42.013 (West 2018); Tex. Fam. Code Ann. § 71.004(1); *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006)). Wang and G.W.'s testimony that they shared a residence was sufficient to establish that G.W. was a member of Wang's household as defined by section 71.005. Tex. Fam. Code Ann. § 71.005.

Therefore, in reviewing the evidence in the light most favorable to the verdict, we hold the testimony and evidence presented at trial legally and factually sufficient for a rational jury to determine beyond a reasonable doubt that Wang assaulted G.W., caused injuries to G.W., and that she was a member of his household as required to convict him of assault family violence. *See Brooks*, 323 S.W.3d at 899. We overrule Wang's second issue.

8

### III. The Trial Court's Affirmative Finding of Family Violence

In issues one and ten, Wang argues that "[t]he jury's verdict is insufficient to support a conviction of assault family violence[.]" Per Wang, because the culpable mental state for assault as defined under section 22.01 of the Penal Code requires that Wang "intentionally, knowingly, or recklessly caused bodily injury to [G.W.,]" it was unconstitutional for the trial court to make a finding of family violence when the mental state for family violence requires that Wang "intended" to cause physical harm, bodily injury, or assault on G.W. *See* Tex. Penal Code Ann. § 22.01(a)(1); Tex. Fam. Code Ann. § 71.004(1). Wang contends that to be convicted of assault family violence, the jury must find his actions were "intentional instead of merely reckless."

Wang's argument is without merit. The following exchange occurred at trial regarding the jury charge conference.

> THE COURT: Was there anything else, [Defense Counsel]? Did you look at the other sections?
>
> [DEFENSE COUNSEL]: Yes, Judge. I didn't have any.
>
> . . .
>
> [DEFENSE COUNSEL]: Assault causing bodily injury family violence. I have a concern, Judge, that a member of the defendant's family or household or person with whom the defendant has or has had a dating relationship isn't defined, but do we need to put that definition in there?

[STATE]: No, it's not for their determination.

THE COURT: The only other question would be do we have an agreement as to whether or not the definition of family violence should be in there? It's not in there now. Are you requesting that it be in there or are you not requesting it?

[DEFENSE COUNSEL]: Is the definition of family violence it's whether or not –

THE COURT: There is a definition right here. "Family violence means an act by a member of family or household against another member of the family or household that is intended" – then you say household means a unit – and it would encompass roommates or anything else.

[STATE]: My understanding from speaking with the domestic violence prosecutors is that it doesn't go in, and it's not for the jury's determination. I think it would be error to add the definition of family violence, and it's up to the judge's determination.

THE COURT: I think that's correct.

[DEFENSE COUNSEL]: Judge, I'm formally requesting the definition of family violence or family and/or household be included in the definition. I don't think that's necessarily a common term for the jurors to understand.

[STATE]: Specifically, another prosecutor did not include the definition of family violence because that's a finding for the judge to make after the conviction.

(Break).

THE COURT: [Defense Counsel], any other objections?

[DEFENSE COUNSEL]: No.

THE COURT: Okay.

10

. . .

THE COURT: Okay. Let's bring them in. Any objection to the jury charge from the state?

[STATE]: None from the state, Judge.

THE COURT: Other than those previously stated from the defense?

[DEFENSE COUNSEL]: No, Judge. Renew my objections about the lesser included.

THE COURT: I've ruled on it.

Under *Almanza*, we use a two-step process in reviewing jury charge error. *See Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). First, we determine whether there was error in the charge. *See Ngo*, 175 S.W.3d at 743. Second, we examine whether the appellant was harmed by the error. *See id*. The level of harm required for reversal depends on whether the appellant preserved the error by objecting at the trial court level. *Id*. at 743–44; *Ferreira v. State*, 514 S.W.3d 297, 300 (Tex. App.—Houston [14th Dist.] 2016, no pet.). If the appellant objected to the charge, we will reverse if we find "some harm[.]" *See Ngo*, 175 S.W.3d at 743–44 (citing *Almanza*, 686 S.W.2d at 171). But if the appellant failed to object to the charge, we will not reverse unless egregious harm is established by the record. *See id*. Because Wang failed to properly object in this case, any jury charge error would only result in reversal if

11

appellant shows "egregious harm." *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (citing *Almanza*, 686 S.W.2d at 171).

The State is not required to have the jury make a determination of the defendant's culpable mental state for the trial court to make an affirmative finding on family violence and the trial court's determination of family violence is not contingent on the jury's verdict.

> Under Tex. Code Crim. Proc. art. 42.013, the plain language of the statute assigns the responsibility for making the family-violence determination *solely* to the trial court and states in pertinent part "if the court determines that the offense involved family violence, . . . the court shall make an affirmative finding of that fact" and enter it in the judgment of the case. Thus, the trial court is statutorily obligated to enter an affirmative finding of family violence in its judgment, if during the guilt phase of trial, the court determines that the offense involved family violence as defined by Tex. Fam. Code [Ann.] § 71.004(1).

*Butler*, 189 S.W.3d at 302 (citations omitted) (emphasis added). Domestic violence is a result-of-conduct offense only. *Price*, 457 S.W.3d at 439. The jury charge defined intentionally, knowingly, and recklessly and tied those definitions to the result of the conduct. The gravamen of the charged offense, assault bodily injury, is conduct that "causes bodily injury." Therefore, the instruction properly defined the offense as solely a result of conduct and was not erroneous. Because the jury is not allowed to make a decision regarding family violence, any language included in the jury charge about Wang's mental state is unnecessary as the family violence

12

finding is exclusively the judge's determination. There is no jury charge error regarding this issue. We overrule Wang's first issue.

In his tenth issue, Wang contends the family violence finding harmed him because it restricts his right to possess ammunition or a firearm under both State and Federal Law. He further argues that the finding will make any subsequent offense punishment range "enhanced to a third-degree felony." Wang challenges the ability of article 42.013 to allow the trial court to enhance his punishment based on a family violence finding. *See* Tex. Code of Crim. Proc. Ann art. 42.013. Our Court of Criminal Appeals rejected a similar argument. *See Butler*, 189 S.W.3d at 302–03. Wang, however, failed to preserve this issue for review in this instance. Wang failed to challenge the constitutional ramifications of the family violence finding at trial. Wang cannot raise a facial challenge to article 42.013's constitutionality for the first time on appeal. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009); *see Moliere v. State,* 574 S.W.3d 21, 25 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd) (citations omitted) (explaining that a facial challenge to the constitutionality of article 42.013 must be "preserved in [the] trial court"); *Shoemaker v. State*, 493 S.W.3d 710, 720 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Accordingly, we overrule Wang's tenth issue.

## IV. Batson Challenges

In his third and fourth issues, Wang argues that the trial court erred when it overruled his *Batson* challenges to the only African-Americans on the jury panel. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986). Wang questions the State's proffered reason for striking the two panel members and contends the record does not support its reasoning.

The Equal Protection Clause forbids the State from exercising peremptory strikes based solely on a potential juror's race. *Batson*, 476 U.S. at 89; *Nieto v. State*, 365 S.W.3d 673, 675 (Tex. Crim. App. 2012). To make a *Batson* claim: (1) the defendant must make a prima facie showing of racial discrimination; (2) if the defendant makes this showing, the State must then articulate a race-neutral explanation for the strike; and (3) the trial court must determine if the defendant has proved purposeful discrimination. *Nieto*, 365 S.W.3d at 676. Absent exceptional circumstances, we defer to the trial court's ruling. *Id*. We consider the entire voir dire record, but we need not limit our review to the specific arguments presented to the trial court. *Id*. We focus on the genuineness, not the reasonableness, of the asserted non-racial motive. *Id*. We may not substitute our judgment for that of the trial court in deciding whether the State's explanation was a pretext. *Id*. We will sustain the trial court's ruling unless it is clearly erroneous. *Id*.

## A. Juror 18

Regarding Juror 18, Wang objected during voir dire and the following exchange took place between the trial court, the State, and Wang.

> [DEFENSE COUNSEL]: I have to make an inquiry. It seems to me from my reading the jury selection that the [S]tate struck – exercised peremptory challenges on jurors number 18 and 23, and I would ask for their reasons for doing that.
>
> [STATE]: Eighteen and 23. We struck 18 and . . . 25.
>
> [DEFENSE COUNSEL]: Okay. I'm sorry. Sorry. We didn't get to 23. Then I guess the reasoning behind striking juror number 18.
>
> [STATE]: Legal reasons.
>
> . . .
>
> [STATE]: Number 18, because he didn't say anything. And we strategically wanted to get to number 22.
>
> . . .
>
> [STATE]: That's one of the reasons why we struck [Juror 18] because he was quiet. And I also wanted to get strategically to 22. If I didn't strike 18 or somebody else I wouldn't be able to get to 22. And I liked every other person. I was fine with 4, 7, 11 because of language issues and number 13 because he works at a church, number 16 because he was eager to serve on the jury. . . . number 18, he was the only person that I could strategically strike to get to number 22.
>
> . . .
>
> THE COURT: My understanding of the case law under Batson is you've got to have a specific, neutral reason for making the challenge. I don't know if not answering any questions is.

15

. . .

[STATE]: Judge, for clarity, the reason is not because he didn't say anything, the reason is because everybody else said something that we liked, and he didn't say anything so we don't know. And we strategically wanted to get to 22 is the reason why we challenged him. If the Court will note, we only used two of our strikes, and the reason we did that, quite frankly, we liked a lot of the jurors and wanted to make sure we got to 22, otherwise, we wouldn't have even used it. If 22 and 18 were switched, we would have never used a strike. The neutral reason is to strategically get to 22, who we found to be favorable.

[DEFENSE COUNSEL]: Judge, I don't understand how they can say used an additional challenge after 22 to get to 22.

. . .

[STATE]: So number 18 because we wanted to get to 22. So we went through every single juror that I believed [Defense Counsel] would strike, and we'd have to get to 22. So I went on a case-by-case basis by each juror, and the only person that didn't say anything or give us any feedback or any comment, whatsoever, was (sic) 22.[2] So that is a race-neutral reason. I'm only striking him . . . to get to 22 because I liked every other juror after that and before him. Judge, my understanding, the defense has to establish a prima [facie] rational[e] that my strikes were made for the purpose of race, and the defense hasn't done that.

[DEFENSE COUNSEL]: Only one person who said absolutely nothing and they struck him. And I mean, assuming I was going to strike 7 and 13.

---

[2] The State references Juror 22, but based on the State's previous statements, we note that the State incorrectly stated Juror 22, but was referencing Juror 18.

16

THE COURT: I've heard y'all say that. All right. I don't think there was a prima [facie] showing that. I don't think we need to get to the next issue.

. . .

[DEFENSE COUNSEL]: So are you overruling my objection?

THE COURT: Correct.

The State told the trial court that they struck Juror 18 because of a strategic decision to get to another juror and because he did not offer any feedback to the State. In response, Wang questioned why the State did not strike Jurors 4, 7, and 13. The State replied that they kept "[Juror] Four because he didn't like [Defense Counsel]. [Juror] Seven, because she was a homemaker and her father's an ex-police officer. And [Juror] 13 because he works at a church, and he deals with battered women." A prosecutor must have credible race-neutral explanations to justify his peremptory strikes. *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). "Credibility can be measured by, among other factors, the prosecutor's demeanor; by how reasonable, or how improbable, the explanations are; and by whether the proffered rationale has some basis in accepted trial strategy." *Id.* The State offered a race-neutral reason for striking Juror 18; he did not speak during voir dire, and the State strategically wanted to get to Juror 22. Our sister courts have held that not choosing a juror because the juror spoke very little or not at all during voir dire is a race-

neutral reason that shifts the burden to the defendant to prove it was pretextual and not genuine. *See Magee v. State*, 994 S.W.2d 878, 889 (Tex. App.—Dallas 1999, pet. ref'd) (stating that the State gave race-neutral reasons for striking a juror because she had a "'meek' and 'quiet spoken' demeanor"); *Davis v. State*, 964 S.W.2d 352, 355 (Tex. App.—Fort Worth 1998, no pet.) (explaining that the State offered a race-neutral reason for its strike because "[t]he prosecutor explained that he struck [the juror] because he did not speak during voir dire[,]" and the Defense offered no evidence rebutting the State's race-neutral decision).

Wang argues that the State did not provide a race-neutral reason for striking juror 18. According to Wang, in a comparative analysis, there were several jurors who either did not speak or offered very little feedback but were not struck by the State. Once the State offers a race-neutral reason for exercising a peremptory challenge, the burden shifts to the defendant to "show that the race-neutral explanation is not genuine (that the peremptory challenge was indeed a product of purposeful discrimination)." *Colone v. State*, 573 S.W.3d 249, 263 (Tex. Crim. App. 2019). Other than challenging the State as to why they did not strike the aforementioned jurors, the defense offered no other argument to the trial court for why the State's peremptory strike was not race-neutral or genuine. Therefore, we

hold that the State offered race-neutral reasons for its peremptory strike of Juror 18 were not controverted by the defense.

**B. Juror 25**

In a similar argument to Juror 18, Wang contends the State did not offer a race-neutral reason for its peremptory strike against Juror 25, the only other African-American juror on the panel. Wang asserts that for the State's reasoning to be genuine, the explanation must apply to other jurors.

In response to Wang's challenge to the State's exercise of a peremptory strike of Juror 25, the State offered the following explanation to the trial court.

> [STATE]: . . . And number 25, I didn't like the way he responded to defense counsel's argument when he said, when you have a battered woman versus an innocent man, do those contradict each other. And number 25 said, yes, they do contradict each other. And we believed he would be more unfavorable to us.
> . . .
>
> THE COURT: I am not too worried about 25 because I heard from him.
>
> . . .
>
> [STATE]: Our immediate gut reaction was 25 because of the way he responded. I didn't like him from the beginning; overall demeanor and the way he actually responded to the question turned me off.
>
> THE COURT: Right. I was satisfied. I heard enough from him to where he could have said something.
>
> . . .

[DEFENSE COUNSEL]: So you are overruling my objection?

THE COURT: Correct.

The State articulated a race-neutral reason for striking Juror 25. The State was concerned that he answered favorable for the defense and pointed to his overall demeanor during voir dire. *See Yarborough v. State*, 947 S.W.2d 892, 896 (Tex. Crim. App. 1997) (holding that a prosecutor's detailed description of a potential juror's demeanor and the trial courts acceptance of the State's explanation was sufficient to overcome a *Batson* challenge).

In challenging the State's strikes for both Jurors 18 and 25, Wang only questioned why the State did not strike other jurors, for which the State offered additional explanations. The State believed the other jurors were favorable to it either by their responses or personal history. The defense did not offer any additional explanation to the trial court for its belief that the State's strikes were pretextual or disingenuous. *See Nieto*, 365 S.W.3d at 680 (holding at trial court's determination that a strike was "racially neutral" because "[t]he State's description of [the potential juror's] demeanor is considered proved on the record because Appellant's counsel did not rebut the observation.). After reviewing the entire voir dire record, we hold the State offered race-neutral reasons for its preemptory strikes, and the trial court did not abuse its discretion in overruling Wang's *Batson* challenges. "On appeal, a

20

trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008) (citations omitted). We overrule Wang's third and fourth issues.

## C. Wang's Challenge for Cause of Juror 7

In his fifth issue, Wang challenges the trial court's denial of his request to dismiss Juror 7 for cause. According to Wang, Juror 7 expressed bias and prejudice toward him, and the State failed to rehabilitate. Wang asserts that because the trial court denied his challenge for cause for Juror 7 and he had to use a peremptory strike on Juror 7, his "substantial rights were affected because the error had a substantial and injurious effect or influence in determining the jury's verdict."

To preserve error for a trial court's erroneous denial of a challenge for cause, Wang must show that he asserted a clear and specific challenge for cause, that he used a peremptory challenge on the complained-of-venire member, that he exhausted his peremptory challenges, that his request for additional strikes was denied, and that an objectionable juror sat on the jury. *See Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010) (citing *Green v. State*, 934 S.W.2d 92, 105 (Tex. Crim. App. 1996)). We review a trial court's decision to deny a challenge for cause by looking at the entire record to determine whether sufficient evidence supports the ruling. *See id.* (citing *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002)).

21

"The test is whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law." *Id.* (citing *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009)). In applying this test, we must afford considerable deference to the trial court's ruling because the trial judge is in the best position to evaluate a panel member's demeanor and response. *See id*. A trial court's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. *Id*. (citing *Gardner,* 306 S.W.3d at 296). "When a venire member's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision." *Id.*

A venire member is challengeable "if he cannot impartially judge the credibility of witnesses[,]" but "this means only that jurors must be open-minded and persuadable, with no extreme or absolute positions regarding the credibility of any witness." *Ladd v. State*, 3 S.W.3d 547, 560 (Tex. Crim. App. 1999) (emphasis omitted). Because "'complete impartiality cannot be realized as long as human beings are called upon to be jurors[,]'" venire members "are not challengeable for cause simply because they would give certain classes of witnesses a slight edge in terms of credibility." *Id.* (quoting *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998) (addressing a venire member who indicated that he would tend to believe a police officer more than another witness)); *see also Smith v. State*, 907 S.W.2d

522, 531 (Tex. Crim. App. 1995) (allowing a venire member who said he might give more credibility to a Texas Ranger's testimony to serve as a juror); *Moore v. State*, 54 S.W.3d 529, 537 (Tex. App.—Fort Worth 2001, pet. ref'd) (holding that a venire member was not challengeable for cause simply because they stated that they "expressed no more than a tendency" to trust an adult's credibility more than that of a child).

"Before venire members may be excused for cause, the law must be explained to them, and they must be asked whether they can follow [the] law, regardless of their personal views." *Davis*, 329 S.W.3d at 807 (citation omitted). The party seeking to have the venire member struck does not meet his burden of establishing that the challenge is proper "until he has shown that the venire member understood the requirements of the law and could not overcome his or her prejudice well enough to follow the law." *Id.* (citation omitted).

> During voir dire, the following exchange occurred with Juror 7.
>
> [DEFENSE COUNSEL]: Okay. Number 22. Number 7. Number 2. Number 24. All right. Yes. Anyone else. Before I've got 2, 7, 22, 24. Number 2, why do you think err on the side of caution for the abused woman versus the possibly innocent man?
>
> . . .
>
> [DEFENSE COUNSEL]: Okay. Number 7.

23

[POTENTIAL JUROR 7]: No specific reason other than probably should have just been fair either way.

[DEFENSE COUNSEL]: Okay. All right.

[POTENTIAL JUROR 7]: My first thought.

. . .

[DEFENSE COUNSEL]: Jurors that raised their hands 2, 7, 13, 22, 24, do you think that err on the side of caution for the possibly abused woman goes against the presumption of innocence as it relates to a possibly innocent man? Do you think that's contradictory?

. . .

[DEFENSE COUNSEL]: All right. Number 7? You think it contradicts it? Okay. Do you think that that would prevent you – in that answer that you gave would prevent you from being a fair and impartial juror in this case?

[POTENTIAL JUROR 7]: Possibly.

Later, outside the presence of the jury panel, Wang challenged Juror 7 for cause, and the trial court denied the challenge. Wang then had to a use a peremptory strike on Juror 7. The trial court denied his request for additional strikes and placed two jurors Wang opposed on the jury. Although Juror 7 indicated they would err on the side of the abused woman, when questioned further by defense counsel they indicated that there was no specific reason, "just . . . fair either way." Later, when questioned further on their perceived bias against Wang, and if they think that bias

24

contradicts Wang's constitutional right to presumption of innocence, Juror 7 simply responded "[p]ossibly."

When examining challenges for cause, we review the entire record, not just juror responses that favor one side over the other. *Cortez ex. Rel. Estate of Puentes v. HCCI-San Antonio, Inc.*, 159 S.W.3d 87, 93 (Tex. 2005) (citations omitted). A juror's indication that a bias is not necessarily disqualifying as long an appellate court examines the record as a whole. *Id.* "An initial 'leaning' is not disqualifying if it represents skepticism rather than an unshakeable conviction." *Id.* at 94 (citing *Feldman*, 71 S.W.3d at 747); *see also Cordova v. State*, 733 S.W.2d 175, 181 (Tex. Crim. App. 1987) (stating that juror's potential bias, when reviewing the testimony as a whole, did not show "that such would cause him to be unwilling or unable to obey the law or follow the oath of a juror"); *see also Silsbee Hosp., Inc. v. George*, 163 S.W.3d 284, 295–96 (Tex. App.—Beaumont 2005, pet. denied) (holding that although a venire member stated "she 'would have trouble not giving him money—something, anyway[,]'" that statement was not unequivocal that she could not follow the instructions of the trial court); *Buls v. Fuselier*, 55 S.W.3d 204, 210 (Tex. App.—Texarkana 2001, no pet.) (stating that a potential juror's response that he "might be" influenced, did not "conclusively establish" that the juror could not be fair and impartial).

The trial court told Wang that it did not note any bias from Juror 7 and denied Wang's challenge for cause. "[T]rial judges are present in the courtroom and are in the best position to evaluate the sincerity and attitude of individual panel members, they are given wide latitude in both conducting voir dire proceedings, and in determining whether a panel member is impermissibly partial[.]" *Murff v. Pass*, 249 S.W.3d 407, 411 (Tex. 2008) (citations omitted). We hold that because the trial court is in the best position to judge potential jurors, specifically their demeanor, and responses to counsel's questions during voir dire, it did not abuse its discretion by denying Wang's challenge for cause for potential Juror 7. We overrule Wang's fifth issue.

## V. Undisclosed Witness

In Wang's sixth issue, he argues the trial court erred by allowing an undisclosed witness to testify as an impeachment witness. Wang alleges that the State "acted in bad faith by not disclosing the witness on its discovery, [and] [t]he State . . . was 'watching and waiting' for impeachment evidence."

We review the trial court's decision to allow an undisclosed witness to testify for an abuse of discretion. *Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000) (citations omitted).

> Among the factors a reviewing court considers in determining whether a trial court abused its discretion by allowing a witness who is not on

26

the State's witness list to testify are (1) whether the State's actions in calling a previously undisclosed witness constituted bad faith, and (2) whether the defendant could have reasonably anticipated that the witness would testify.

*Hamann v. State*, 428 S.W.3d 221, 227–28 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citations omitted). One factor to consider when reviewing is whether there was a showing of bad faith on the prosecutor's part for failing to disclose the witness ahead of trial. *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). "Another such factor is whether the defendant can reasonably anticipate that the witness would testify although his or her name was not included within the witness list." *Id.* at 514–15 (citation omitted). We then turn our review to the defense and determine if the defense reasonably anticipated the State would call the undisclosed witness. *Hamann*, 428 S.W.3d at 228. We analyze

(1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise (i.e., the defendant was aware of what the witness would say, or the witness testified about cumulative or uncontested issues); and (3) the degree to which the trial court was able to remedy that surprise (i.e., by granting the defense a recess, postponement, or continuance, or by ordering the State to provide the witness's criminal history).

*Id.*

After S.W. testified at the trial, the State called Jane Hanisee, a victim assistance coordinator with the Montgomery County District Attorney's Office, to rebut S.W.'s equivocation while on the stand. Wang objected, and the trial court

27

initially sustained the objection, but ultimately allowed Hanisee to testify the following day with a limiting instruction that her testimony "is going to be of the nature of impeachment testimony, and this is the only thing you can use it for."

In its argument to the trial court, the State said that they called Hanisee to rebut S.W.'s statement that she did not see her father hit her mother and her denial that she met with the D.A.'s office without her mother. When questioned as to why the State did not disclose to the defense a witness who actually interviewed the child, the State apologized to the trial court and explained a prior prosecutor handed them this case, that they supplemented their discovery responses seven times, and they "tried [their] best." The State advised the judge of Wang's counsel's presence during a deposition where the State expressed concerns that S.W. would change her story, and defense counsel had "specifically dealt with the victim's assistance coordinator and seen [Hanisee] come in the office. He knows we have a victim assistance coordinator staff on duty." The State told the trial court that it informed the defense, via text message, of the conversation between Hanisee and S.W. in early October, at least two weeks before trial. After overruling Wang's objection, the trial court allowed the defense an overnight recess to speak to Hanisee about her anticipated testimony.

Because the State called Hanisee as a rebuttal witness, it "is generally" not required to disclose the witness to the defense. *See Beets v. State*, 767 S.W.2d 711, 747 (Tex. Crim. App. 1987) ("[T]he State is generally *not* required to reveal names and addresses of witnesses *other* than those it intends to call to the stand."). The actions by the State do not show that it acted in bad faith by not disclosing Hanisee to the defense. *See Martinez v. State*, 131 S.W.3d 22, 29–30 (Tex. Crim. App. 2003) (holding that the State did not act in bad faith when the prosecutor apologized to the trial court, told the trial court it was a computer mistake to leave off the name of witnesses from discovery responses, the defense was given time to talk to the witnesses not disclosed, and the State's reaction was immediate in identifying its undisclosed witnesses). We also note that the State attempted to rehabilitate S.W.'s testimony several times during direct examination, even mentioning Hanisee's therapy dog during the examination. *See Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 4 (Tex. 1994) (citation omitted) (explaining that a party may be allowed to call an undisclosed witness to rebut an unanticipated change in testimony of another witness). One of the things a trial court may consider in determining if the prosecutor engaged in bad faith is whether the defendant could reasonably anticipate the witness would testify, and "[a]bsent a showing of bad faith, a trial court does not abuse its discretion by allowing the State to call a witness for the sole purpose of

29

rebutting unforeseen testimony." *Marx v. State*, 953 S.W.2d 321, 338 (Tex. Crim. App. 1997) (citations omitted).

We now turn our review to the second prong of the test, whether the defense could have reasonably anticipated that the undisclosed witness would testify. Hanisee is a victim assistance coordinator with the Montgomery County District Attorney's office who the defense has dealt with on many occasions. Wang's trial counsel knew the State had concerns that S.W. might change her story as early as July, and in early October, the State contacted defense via text message about the conversation between Hanisee and S.W. The defense heard the direct examination of S.W.'s testimony and the State's attempts to rehabilitate S.W., including mentioning the therapy dog utilized by Hanisee in her conversation with S.W. Finally, the record shows that although Wang objected to the testimony at trial, he failed to request a continuance once he became aware that the trial court would allow Hanisee to testify. *Lindley v. State*, 635 S.W.2d 541, 544 (Tex. Crim. App. [Panel Op.] 1982) (citation omitted) (holding that "[t]he failure to request a postponement or seek a continuance waives any error urged in an appeal on the basis of surprise"); *see also Tamez v. State*, 205 S.W.3d 32, 40 (Tex. App.—Tyler 2006, no pet.); *Massimo v. State*, 144 S.W.3d 210, 215 (Tex. App.—Fort Worth 2004, no pet.). Because Wang could have reasonably anticipated that Hanisee would be called to

30

rebut S.W.'s testimony, the trial court did not abuse its discretion by allowing Hanisee to testify. *See Beets*, 767 S.W.2d at 747 ("While the better practice is for designation of all prospective witnesses who then later testify, it is within the discretion of the trial court to allow the testimony of a witness who has not been disclosed to the defense pursuant to discovery motion, subject to appellate review of the trial judge's exercise of that discretion."). We overrule Wang's sixth issue.

## VI. Recording of Argument

Wang argues in issue seven that the "trial court erred by admitting a recording of a previous argument between [G.W.] and Appellant as it was not relevant." Wang contends that because the previous argument did not involve physical assault, the recording is irrelevant. We review a trial court's rulings on admission of evidence for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378–79 (Tex. Crim. App. 1990) (op. on reh'g). We uphold a trial judge's decision to admit evidence as long as the result is not outside the zone of reasonable disagreement. *Id*. at 391. Appellate courts must afford a trial court such great discretion in its evidentiary decisions "because the trial court judge is in a superior position to evaluate the impact of the evidence." *Id*. at 378–79.

"Generally, all relevant evidence is admissible." *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *see also* Tex. R. Evid. 402. Relevant evidence is

31

that which has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. Tex. R. Evid. 401. When determining whether evidence is relevant, it is important for courts to examine the purpose for which the evidence is being introduced. *See Moreno v. State*, 858 S.W.2d 453, 464 (Tex. Crim. App. 1993). In determining whether a particular piece of evidence is relevant, the trial judge should ask if a reasonable person would believe that the evidence is helpful in determining the truth or falsity of any fact of consequence. *Montgomery*, 810 S.W.2d at 376.

The recording admitted at trial contains an argument between G.W. and Wang that S.W. recorded on a cell phone months before the assault in this case. Because they argued in a foreign language, the trial court allowed G.W. to testify about what they said. Wang objected at trial to the admission of the recording as not relevant and not properly authenticated because G.W. did not make the recording. The State argued that the recording is relevant because the recording was close to the date of the assault and displays the controlling nature of their relationship. The trial court overruled the objection. Wang further objected to G.W. translating the recording. A translator attended the trial, but according to the State, the parties speak a subset dialect of Mandarin called Wuhan, which the interpreter could not understand. The State responded that this constituted an admission by a party opponent and therefore

G.W. could testify about what Wang said on the recording. The trial overruled Wang's objection. G.W. testified about the contents of the recording and Wang's statements on the tapes. G.W. stated that Wang, in a raised voice, used vulgar words, and Wang threatened to kick her out of their house.

Assuming without deciding that the trial court erred by admitting the recording, we must determine if its admission harmed Wang. A violation of the evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Cordero v. State*, 444 S.W.3d 812, 819 (Tex. App.—Beaumont 2014, pet. ref'd). Such errors "must be disregarded" if they do not affect a defendant's "substantial rights[.]" Tex. R. App. P. 44.2(b); *accord Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). An error affects a substantial right if "the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997) (citation omitted). However, we will not overturn a criminal conviction for a non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not influence the jury or influenced the jury only slightly. *Barshaw*, 342 S.W.3d at 93.

The testimony regarding the recording was brief and not overly arduous. The State presented other evidence and trial testimony about Wang's controlling nature

33

and the arguments between G.W. and him. G.W. testified at length about their relationship and how Wang exercised control over her and their finances. It is unlikely that the jury gave much weight to any additional evidence about an argument between the parties. *See Anderson v. State*, 717 S.W.2d 622, 628 (Tex. Crim. App. 1986) ("Inadmissible evidence can be rendered harmless if other evidence at trial is admitted without objection and it proves the same fact that the inadmissible evidence sought to prove."); *see also Zafar v. State*, No. 02-17-00119-CR, 2018 WL 2248483, at *6 (Tex. App.—Fort Worth May 17, 2018, pet. ref'd) (mem. op., not designated for publication) (holding that witness's translation of a phone conversation between herself and the appellant conducted in Urdu, a mix of Hindi and another language, was not in error because it "did not have a tendency to suggest a decision on an improper basis, did not have a tendency to confuse or distract the jury from the main issue in the case, and did not consume an inordinate amount of time"). In addition, Wang chose to testify at trial and discussed the recording. We defer to the jury's determination of the credibility of the witnesses. "The jury is the sole judge of the credibility and weight to be attached to witness testimony. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Balderas v. State*, 517 S.W.3d 756, 766 (Tex. Crim. App. 2016) (citations omitted).

34

Therefore, we hold that the admission of the recording did not harm Wang and overrule his seventh issue.

## VII. Recording without a Certified Translation

In his ninth issue, Wang argues that the trial court erred in admitting the recording of the argument between G.W. and Wang when the certified interpreter could not translate the recording at trial. Wang contends this error harmed him "as the translation was unavailable for certification and therefore the jury should not have been allowed to rely on the witness' translation of the recording."

"Where an interpreter has been appointed, the standard of review depends on the nature of the complaint made." *Martins v. State*, 52 S.W.3d 459, 469 (Tex. App.—Corpus Christi 2001, no pet.). "An attack on the accuracy of a translation…is a question of fact for the factfinder and so not reviewable on appeal." *Id*. at 470 (citation omitted). Wang relies on Texas Rule of Evidence 1009, arguing that for a document in foreign language to be admitted, the translation must be served on all the parties and certified by a qualified translator. *See* Tex. R. Evid. 1009. Wang then directs us to review article 38.30 of the Code of Criminal Procedure providing if "it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for the person charged or the witness." Tex. Code Crim. Proc. Ann. art. 38.30 (West 2018).

35

> Neither article 38.30 nor Rule 1009 requires an interpreter to be "certified" or "licensed" in order to provide an admissible translation. Individuals called upon to act as interpreters during criminal proceedings are not required to have specific qualifications or training; instead, what is required is "sufficient skill in translating and familiarity with the use of slang."

*Castrejon v. State*, 428 S.W.3d 179, 188 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citations omitted) "An individual who participated in a conversation in a foreign language is not required to have specific qualifications or training in interpreting or translating; instead, what is required is 'sufficient skill in translating and familiarity with the use of slang.'" *Zafar*, 2018 WL 2248483, at , *5 (quoting *Chavez v. State*, No. 07-17-00016-CR, 2017 WL 3298489, at *1–2 (Tex. App.—Amarillo Aug. 1, 2017, pet. ref'd) (mem. op., not designated for publication)).

G.W. testified that she participated in the recorded argument, speaks Wuhan, studied the Wuhan dialect, and fully understands the language. In his brief, Wang does not argue that G.W. did not understand Wuhan or lacked the qualifications to translate the recording, rather he contends only that the interpretation was wrong. Wang does not present us with any inconsistencies in G.W.'s translations, he only argues that the "jury should not have been allowed to rely on the witness' translation of the recording." The credibility of G.W.'s translation is for the jury to decide. *See Zafar*, 2018 WL 2248483, at *6 (holding that "the extent [appellant] challenges the credibility of [the witness's] testimony regarding the [translated] phone

36

conversation, that was an issue for the jury to weigh[,]" and the trial court did not abuse its discretion "[b]ecause the trial court reasonably could have determined that [the witness] had sufficient skill in translating Urdu, possessed adequate interpreting skills for the particular situation, and was familiar with the use of slang in Urdu[.]"). We overrule Wang's ninth issue.

## VIII. The Trial Court's Rulings on Recording Translations

In his eighth issue, Wang argues that by allowing G.W. to translate the recording, the trial court commented on the credibility of the witnesses. Wang contends that when the trial court allowed G.W. to translate a recording but later did not allow Wang to translate a different recording, it constituted "disparate treatment[,] . . . a comment by the court on the credibility of [G.W.] versus Appellant, that the court believe[d] [G.W.] could be trusted to accurately translate an audio, but Appellant could not similarly be trusted."

"We afford a trial court wide discretion in determining the adequacy of interpretive services." *Castrejon*, 428 S.W.3d at 184 (citing *Linton v. State*, 275 S.W.3d 493, 500 (Tex. Crim. App. 2009)). "The competency of an individual to act as an interpreter is a question for the trial court, and absent a showing of abuse of discretion, that determination will not be disturbed on appeal." *Kan v. State*, 4 S.W.3d 38, 41 (Tex. App.—San Antonio 1999, pet. ref'd) (citations omitted).

37

When the State attempted to admit the recording of the argument between G.W. and Wang, the trial court initially was going to require the interpreter to translate the recording for the jury. The State told the trial court that the recording was in Wuhan, a subset dialect of Mandarin. The interpreter confirmed that she did not understand the language on the recording. G.W. told the trial court that she spoke Wuhan, studied both Mandarin and Wuhan, and was qualified to translate what was being said on the recording because she participated in the argument. In contrast, when the trial court did not allow Wang to translate another recording he attempted to admit, and required the interpreter to translate, the court reasoned that the interpreter testified she understood the language in Wang's recording and could translate it. The trial court did not abuse its discretion by determining that G.W. could translate the recorded argument in the Wuhan dialect and determining that the interpreter should translate other recordings not in the Wuhan dialect. "[S]o long as the interpreter is 'considered to possess adequate interpreting skills for the particular situation' and is 'familiar with the use of slang' to the satisfaction of the trial court." *Leal v. State*, 782 S.W.2d 844, 849 (Tex. Crim. App. 1989).

Article 38.05 of the code of criminal procedure provides:

In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any

38

stage of the proceeding previous to the return of the verdict, make any
remark calculated to convey to the jury his opinion of the case.

Tex. Code Crim. Proc. Ann. art. 38.05 (West 1979); *see also Brown v. State*, 122

S.W.3d 794, 798 (Tex. Crim. App. 2003) (holding that a trial judge must refrain

from making any remark calculated to convey his opinion of the case because jurors

give special and peculiar weight to the language and conduct of the trial judge). To

comply with this directive, a trial judge must limit his or her comments from the

bench and maintain an attitude of impartiality throughout the trial. *Strong v. State*,

138 S.W.3d 546, 552 (Tex. App.—Corpus Christi 2004, no pet.); *Hoang v. State*,

997 S.W.2d 678, 680 (Tex. App.—Texarkana 1999, no pet.). "A trial court

improperly comments on the weight of the evidence if it makes a statement that

implies approval of the State's argument, that indicates any disbelief in the defense's

position, or that diminishes the credibility of the defense's approach to its case."

*Hoang*, 997 S.W.2d at 681 (citations omitted). And to constitute reversible error,

"any unauthorized comments must be reasonably calculated to benefit the State or

prejudice a defendant's rights." *Strong*, 138 S.W.3d at 552. However, "[a] judge can

lawfully provide guidance and manage the presentation of evidence from the bench

without abandoning his role as an independent arbiter." *Id*. at 552 (citing Tex. R.

Evid. 611(a)).

Here, the record is clear that the trial judge's rulings were intended to manage the presentation of evidence in a difficult situation where the defendant and the victim spoke a foreign dialect. The trial judge's rulings were not reasonably calculated to benefit the State or prejudice the defendant's rights. Wang does not provide any persuasive authority that the trial court's decision allowing G.W. to translate a recording and to disallow Wang to translate his recording was an improper comment of the credibility of the witnesses and not within the trial court's discretion. We overrule Wang's eighth issue.

## IX. Motion for New Trial

Wang argues in his eleventh issue that the trial court erred by denying his motion for new trial. Wang states that he requested a new trial because "(1) his due process rights were denied during the trial by use of false testimony and (2) requesting a new punishment hearing since the jury verdict did not support a family violence finding."

We review a trial court's denial of a motion for new trial for an abuse of discretion. *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007); *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006); *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). We cannot substitute our judgment for the trial court's; rather, we determine whether the trial court was arbitrary or unreasonable in its

40

decision. *See Holden*, 201 S.W.3d at 763. We must uphold the trial court's ruling if it fell within the zone of reasonable disagreement. *See Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).

## X. False Testimony

Wang argues that the trial court's refusal to grant a new trial based on false testimony violated his due process rights. According to Wang, G.W. lied about being married to Wang and her educational background, and the false testimony misled the jury about her credibility as a witness. In addition, Wang states that due to false testimony, the trial court should have granted the motion for new trial on punishment because the family violence finding was in error.[3] "A due process violation is established if the prosecutor knowingly uses perjured testimony and the reviewing court cannot determine beyond a reasonable doubt that the testimony was harmless." *See Vasquez v. State*, 67 S.W.3d 229, 239 n.19 (Tex. Crim. App. 2002) (citing *United*

---

[3] Wang does not fully address this argument in his brief, only arguing that he should receive "a new punishment hearing since the jury verdict did not support a family violence finding." Rule 38.9 requires us to liberally construe briefs, and we will assume this argument relates to the tenth issue of his brief that the trial court erred in finding family violence had occurred in the punishment phase of his trial. Tex. R. App. P. 38.9. As we have already extensively addressed the trial court's finding of family violence and held that the trial court did not err when it found that Wang committed family violence, we will not address this argument a second time.

*States v. Bagley*, 473 U.S. 667, 678–679 (1985)). An allegation of perjury or false testimony must have support in the record. *See Hawkins v. State*, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983) (citation omitted). "A due-process violation may arise not only through false testimony specifically elicited by the State, but also by the State's failure to correct testimony it knows to be false*." Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim App. 2011).

In support of his argument that the State presented false testimony at trial, Wang attaches his mother's affidavit averring that G.W. told her that she fabricated her degrees and presented a fake marriage certificate between herself and Wang to the Chinese Consulate and United States Immigration Officials. Wang's motion for new trial argues that G.W.'s testimony was "essential to the jury as her testimony was essential for the State to obtain a conviction." Wang states that G.W.'s testimony at trial created a false impression of her credibility and that the jury should have been aware of her history of lying to authorities.

For testimony to amount to a due process violation, it must be materially false. *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012). There must be a "reasonable likelihood" that the testimony affected the jury's judgment. *Id*. Here, assuming without deciding that G.W. provided false testimony about her educational background and her marital status, that was not a material testimony that would

42

affect the judgment. Wang's mother testified at trial and her testimony was similar to the information provided in her affidavit. She stated that G.W. and Wang were not married and that G.W. lied about being married. Wang's mother testified as to G.W.'s truthfulness when she stated that G.W. told Mira to lie to the police. Wang's mother also testified that G.W. does not "have any education." This testimony was coupled with Wang's testimony at trial that he was not married to G.W., and G.W. presented false marriage certificates to her company to get vacation benefits. The trial court also admitted Wang's recording during the trial that he claims captured S.W. stating that G.W. told her to lie to the police.

In reviewing the record as a whole, it is unlikely that G.W.'s testimony about her marital status or her educational background materially affected Wang's conviction or punishment. Wang admitted that he and G.W. were the parents of the same child. G.W., Wang and his mother testified about G.W.'s background and her truthfulness, and the jury heard conflicting testimony regarding these issues from all three witnesses. *See Ex parte De La Cruz*, 466 S.W.3d 855, 870–871 (Tex. Crim. App. 2015) (citing *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997) (noting "[the] fact that witnesses have given inconsistent or conflicting testimony does not establish that such testimony was false")). The jury is the sole determination of the credibility of the witnesses and credited G.W.'s testimony as more reliable

than Wang or his mother. "A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony." *Febus v. State,* 542 S.W.3d 568, 572 (Tex. Crim. App. 2018). We hold that the issue of G.W.'s marital status and education background to be immaterial, and Wang's motion for new trial does not raise new evidentiary issues not addressed at trial. Therefore, the trial court did not abuse its discretion when it denied Wang's motion for new trial. We overrule Wang's eleventh issue.

## XI. Enhancement Paragraph

In his twelfth issue, Wang argues that the judgment of the trial court should be reformed to remove a true finding to enhancement paragraph one. The State agrees and requests this Court reform the judgment to remove the enhancement finding. We sustain issue twelve and reform the judgment to state that Wang did not plead true to the first enhancement paragraph and the trial court did not make a finding of true on the first enhancement paragraph. *See Morris v. State*, 301 S.W.3d 281, 295–96 (Tex. Crim. App. 2009); *see also McCray v. State*, 876 S.W.2d 214, 216–17 (Tex. App.—Beaumont 1994, no pet.) ("[W]hen the court has the necessary data and evidence before it for reformation, the judgment and sentence may be reformed on appeal.").

## XII. Community Supervision Condition

In his final issue, Wang contends that the judgment should be reformed to remove a community supervision condition requiring him to pay for G.W.'s counseling for a year. A defendant must make an affirmative objection to a condition of community supervision to preserve error on appeal. *Speth v. State*, 6 S.W.3d 530, 534 (Tex. Crim. App. 1999).[4] "An award of community supervision is not a right, but a contractual privilege, and conditions thereof are terms of the contract entered into between the trial court and the defendant." *Id*. "Thus, by entering into the contractual relationship without objection, a defendant affirmatively waives any rights encroached upon by the terms of the contract." *Id*. There are two exceptions to Wang's responsibility to object to the terms of his community supervision at trial;

---

[4] The Court of Criminal Appeals addressed this issue in *Wiley v. State*, explaining that an imposition of attorney's fees was not "only . . . a condition of community supervision[,]" but authorized by statute. 410 S.W.3d 313, 319–20 (Tex. Crim. App. 2013) (emphasis omitted). The court reasoned that if a judgment independently required the appellant to pay attorney's fees, it was "quite apart" from the "contract" of community supervision and could be reviewed on appeal as an evidentiary sufficiency claim, regardless if the appellant objected during trial. *Id*. at 320. The obligation by Wang to reimburse G.W. for counseling as necessary was not an obligation independent of his community supervision. Wang did not preserve this issue for appeal when he failed to object to the reimbursement during trial. *See Butler v. State*, 189 S.W.3d 299, 303 (Tex. Crim. App. 2006) (holding that "community supervision is not part of the defendant's sentence, and that the trial court has broad discretion, not only in deciding whether to grant community supervision, but also in determining the conditions of that supervision") (citation omitted).

45

one, he may challenge for the first time on appeal, a condition that he was unaware of at trial, and two, he does not have to object to a "condition 'that the criminal justice system finds to be intolerable[.]'" *Milum v. State*, 482 S.W.3d 261, 264 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (quoting *Gutierrez-Rodriguez v. State*, 444 S.W.3d 21, 23 (Tex. Crim. App. 2014)).

The record shows that the trial court ordered Wang to reimburse G.W. for any reasonable counseling expenses that she incurs within one year. Wang's trial counsel did not object to the condition, instead he only clarified with the court how much Wang must pay and how he would reimburse G.W. Neither exception to the requirement that Wang object at trial applies in this case. Wang was present when the trial court ordered the reimbursement, and defense counsel questioned the trial court about the logistics of the condition. Wang never objected to the terms of his community supervision. Reimbursement to a victim for counseling is not an intolerable condition of community supervision. "A broad interpretation of the restitution statutes provides judges with 'greater discretion in effectuating opportunities for rehabilitating criminals, deterring future harms, and efficiently compensating victims.'" *Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014) (quoting *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd)). Therefore, we hold that Wang failed to preserve his complaint for appellate

review. *See Gutierrez-Rodriguez*, 444 S.W.3d at 24 ("[r]egardless of how appellant's complaint is characterized, she bound herself to the terms of the probation contract by accepting the benefits of the contract without objection."). We overrule Wang's final issue.

## XIII. Conclusion

Having sustained Wang's twelfth issue, we reform the trial court's judgment and modify enhancement paragraph one to delete the finding of "true." We overrule Wang's remaining issues and affirm the judgment of the trial court as modified.

AFFIRMED AS MODIFIED.

_____
CHARLES KREGER
Justice

Submitted on April 1, 2019
Opinion Delivered October 9, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.

47